Your Honor, usually I begin an oral argument by trying to identify the issues presented for the court, but it seems that the landscape of this case has changed radically since the government filed its 28-J on Friday. So I don't really know where you would like me to begin, except that— Sotomayor Right. This is — this has been in — since the government filed its answer to the petition, this summary was in the record, right? Craig Correct. Sotomayor And when I looked at it, it looked like they were only crediting him — or they were only applying the 50 — disallowing 54 days per year. Craig Right. What — Sotomayor And that seems to be what the government confirms in its 28-J letter that were received on Friday. Craig Right. It seems that we received something from the government to that effect on Friday. And I guess just to explain how we got to this point, when I was contacted by the court about representing Mr. Sanchez-Alanis on appeal, the question specifically posed in the order was, is the BOP disallowing more than 54 days of good conduct credit per year? In other words, in carrying, you know, days in excess of 54 forward. So — and frankly, I have no idea. This isn't really what I typically — the area that I practice in. So I contacted government counsel. We talked about it. I was under the impression that the answer to that question was yes. I reviewed the — what had been filed in district court. And there was a — there was a — the government summarized a declaration from someone at the Department of — with the Bureau of Prisons saying that, according to Petitioner's sentence monitoring good time data, the maximum that could be disallowed was 54 days. The actual amount disallowed was 162. That implied to me that they were disallowing 54 days per year, but then carrying forward — carrying forward excess in the future years. So, you know, this is all outside of the — Well, we don't know what they're going to do at the end of his anticipated term, which doesn't — which is not until 7-13-19, right? Right. So, I mean, just to make a long story short, I discussed it with government counsel. I thought we were both on the same page, that they were carrying deductions forward into future years. That's how I answered the question in the opening brief. The government didn't dispute that in the answering brief. Then I, you know, filed a reply brief with that understanding. And then on Friday, apparently, the government has changed its position. So that's — that's where we are. But do we even have a dispute? I really don't know. I mean, I received this 28-J letter Friday. I would like the opportunity to, you know, look into it a little bit more and perhaps file a 28-J of my own, but, you know, it's — it's difficult when the — when the record is kind of shifting beneath your feet to — Well, I mean, my — my point was simply that if you look at this — this summary here, it looks as though he still has potentially available 282 days of good-time credit if he behaves himself. Right. It also — though it says that 162 days were disallowed the first year and 81 the third year, so I think it's kind of ambiguous. But we haven't got to the point — well, we also know that his good-time days don't vest until he finishes his term. Right. According to the statute. No. And that would be — I think there's a separate argument as to whether the BOP can go back and deduct for — say someone gets 54 days of credit in a given year, and then in a subsequent year misbehaves and loses more than 54 days, can they go back and take away credits from a previous year? My position is no, they can't, but — But that's not raised here. We're not there yet. There's obviously a mootness question there. Well, that's not right. Right. So both parties are in agreement right now. Well, I don't know that I would go so far as to say I'm in agreement. I just — you know, I was caught a little off-guard by the 28J on Friday, and I — you know, I don't — I don't have any way of disputing what's in the letter. I'm just telling Your Honors how we ended up, you know, to this point. Okay. Why don't we hear from the government? Okay. Thank you. May it please the Court, Denise Falk for the wardens. And I apologize for the late 28J. In preparing for the oral argument, I contacted the Bureau of Prisons Agency counsel so I could nail down the difference between disallowed good conduct time and forfeiture of non-vested good conduct time in case it came up during the argument. And in the process of that discussion, realized that the premise that counsel and I were arguing was actually incorrect. The Bureau of Prisons does not disallow prospective good conduct time. You are reading the summary sheet exactly correctly. The full — expired full term date is July 12th, 2020. He — Mr. Sanchez-Alanis at this time had available 282 days of anticipated good conduct time. He had not at that time earned any good conduct time, but he had available the 12 prorated days from the last year and 54 days for each of the five years that he had not served at that time. That comes out to 282 days. You subtract 282 days from July 12th of 2020. You receive — you get to a projected satisfaction date of October 4th, 2019, which is what the statute requires. And the projected satisfaction method is good conduct time release. So, you know, you are actually reading the form correctly. We were reading the form incorrectly, and I apologize for that, for the confusion that that caused. But it's clear to me that the Bureau of Prisons is actually operating correctly under the statute. He has the opportunity to earn 54 days good conduct time each year. And despite the fact that he was disallowed good conduct time in excess of 54 days in his first year and his third year, the Bureau of Prisons did not deduct from his actual release date any days in excess of the 54 days. And, you know, as to the vesting issue, you're correct again. We're not there. At the time that he filed the petition, he had not earned any good conduct time. He did not have any good conduct time that was available to be forfeited, and so that issue isn't actually before the Court. Let me ask you this. What's it — what do you understand to be at issue in the petition? Your Honor, I think in the original petition, Bunch's, Alana's — I'm sorry. I think I'm mispronouncing his name. He was — Alaniz. Alaniz? Alaniz. Alaniz. Sanchez Alaniz was under the impression that — that the Bureau of Prisons was disallowing the entire 162 days for the first year, 81 days for the third year, when he only had 54 days, when they could only disallow 54 days. He had previously been sentenced under — or he had previously been in prison under the prior statutes, which did actually vest. And so I think he was under the impression that his — he didn't have any good conduct time that had vested, so we were disallowing non-vested good conduct time that he didn't have, which must mean the future good conduct time. So I think there's been confusion all the way through, but what is apparent at this point is that the Bureau of Prisons has actually complied with the statute. Do they do this each year or do they do it at the end of his term when he would have  How is it computed? Each year it's updated, and for a new — for a new release date, if he earns 54 days — well, if he were to earn 54 days, the release date wouldn't change, if he earned 54 days each year. If he — if some time was disallowed, then it would be recomputed. So it's recomputed every year? Yes. After 12 months or whatever time? His incarceration year, as opposed to a calendar year. And then in the last six weeks, the last year is prorated, and the final computation is done in the last six weeks. Because it doesn't vest until he's actually released from prison, the final calculation isn't done until he's released. He could actually, as the Supreme Court recognized in Barber v. Thomas, he could lose all of the good conduct time that he had earned on the last day, and then he would, you know, not get the benefit of that time. He would stay in prison. That's not the situation we have here, because at the time that he filed the petition, he had not earned any good conduct time. Right. Why do you — so you're providing the relief that the petitioner is asking for, is what you're saying, already? Actually, what I'm saying is, the Bureau of Prisons had already provided the relief that he was asking for. He wanted them to be limited to the 54 days. They are self-limiting to the 54 days. Okay. Thank you, Your Honor. Thank you. You had a minute or two for rebuttal. Do you wish to offer anything? I don't think I've — Okay. Thank you. Okay. I'll get the matter submitted, then. The next case on the calendar, Operol v. Bank of America, is submitted on the briefs. Also, Higuerera v. Segura is also submitted on the briefs. And that takes us to Ma v. Sessions.
judges: Siler, Paez, Ikuta